**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NOVA CORP., a New Jersey corporation : | |
| : | |
| Plaintiff, : | Civil Action No. 07-cv-1104 (PGS) |
| : | |
| v. : | |
| : | |
| : | **OPINION** |
| JOSEPH STADELMANN ELECTRICAL, : | |
| CONTRACTORS, INC., a Massachusetts : | |
| corporation, d/b/a/ STADELMANN : | |
| ELECTRIC : | |
| Defendants. : | |

SHERIDAN, U.S.D.J.

      Defendant, Joseph Stadelmann's (Stadelmann) moves to dismiss the instant action and compel arbitration pursuant to Fed.R.Civ.P. 12(b)(1) and the Federal Arbitration Act. 9 U.S.C. § 2, 3. This court has jurisdiction pursuant to 28 U.S.C. §1332(a)(2), as Defendant is incorporated in New Jersey and Plaintiff is incorporated in Massachusetts. On March 9, 2007, Plaintiff Nova Corp., ("Nova") filed a complaint against Defendant asserting claims for breach of contract, and negligent performance stemming from the construction of a building in Ashburn, Virginia. On April 11, 2007, Stadelmann filed a demand for arbitration pursuant to the construction industry arbitration rules. Stadelmann now moves to dismiss the instant complaint for lack of subject matter jurisdiction, or in the alternative stay the action pending arbitration. Plaintiff opposes same because it maintains that the parties did not agree to arbitrate the claims raised in their complaint.

      Nova is a general contractor who has construction projects in many states. In order to meet

its construction obligations and schedules, Nova pre-qualifies subcontractors. Nova's practice is to enter a Master Subcontract Agreement (MSA) with such qualified subcontractors. The MSA contains common provisions that are the same for each subcontractor on every project such as insurance and indemnification requirements. The MSA also provides that the laws of New Jersey governs contractual disputes, its term is one year, and the Subcontractor must complete all authorized work prior to cancellation of the agreement. The MSA states that it "applies to Subcontractor work authorized through a Nova Corp., Purchase Order." and requires that any "specific project is to be completed by conforming strictly with all specifications and conditions relating to this Agreement."

Nova and Stadelmann entered into a MSA on March 29, 2006 which prequalified Stadelmann to provide electrical contracting services for Nova.

At some point, Nova was named construction manager of Building E of the Equinix Beaumeade Technology Center, in Ashburn Virginia. ("Equinix Project") by Equinix, Inc., the owner.

As construction manager, Nova issued a document entitled "Project Manual for the Equinix Ashburn E: MGMA Project" ("Project Manual"). The Project Manual contained numerous provisions and drawings, and sought bids from its pre-qualified subcontractors, including electrical contractors such as Stadelmann. Within the Project Manual, there is a provision which incorporates by reference a document entitled "General Conditions of the Contract for Construction" as promulgated by the American Institute of Architects (AIA) in a document commonly referred to as "A-201, Fourteenth Edition, 1987"). This provision within the Project Manual is conspicuously placed on a separate page, and it states in full:

DOCUMENT 00700

GENERAL CONDITIONS - AIA

1.  GENERAL CONDITIONS

A.  The "General Conditions of the Contract for Construction"

AIA document A-201 Fourteenth Edition, 1987.

Within AIA document A-201, there is a section entitled "Arbitration" which is comprehensive. In a nutshell, it requires that "any controversy or claim arising out of or related to the Contract or breach thereof, shall be settled by arbitration . . . " The arbitration section includes the controversies and claims subject to arbitration (4.5.1), the rules for arbitration (4.5.2), contract performance (4.5.3), when arbitration may be demanded (4.5.4) and limitations on joinder (4.5.5.).

On or about May 31, 2006, based upon all the provisions of the Project Manual, Stadelmann submitted a bid of $14.8 million. On June 27, 2006, Nova accepted the bid by purchase order. The purchase order states in part:

> Scope of Purchase Order:
>
> Base contract @ $14,800,000.00. Final cost adjusted after valued engineering. As per plans and specifications dated 5.31.06.
>
> Uncategorized Electrical
>
> All work is to be performed according to supplied general requirements, bid specifications, working drawings, applicable codes, and OSHA requirements.
>
> Please reference PO number on all invoices and payment applications.
>
> Refer to your Subcontractor/Vendor agreement for all terms and conditions for the performance of this work.

In December of 2006, a dispute arose a dispute arose between Stadelmann and Nova over the working conditions at the Equinix Project. Stadelmann suspended its work because of safety concerns of its employees on the site. At this point in time, 90% of the work was completed. Stadelmann also informed Nova, that it would resume work once these conditions were corrected. Nova in response terminated the contract. According to Stadelmann the work completed for which it had not been paid, totals approximately $2.4 million dollars.

On March 9, 2007, Nova filed the instant complaint alleging that Stadelmann breached the contract by abandoning work on the Equinix Project. Nova further alleges that the work Stadelmann negligently performed its duties causing Nova to incur damages. (Compl. ¶¶16-18;20-23).

## *Discussion:*

Motions to stay proceedings and to compel arbitration are reviewed under the summary judgment standard set forth in Fed.R.Civ.P. 56(c). *Cunningham v. Citigroup,* 2005 U.S. Dist. LEXIS 33805, *6 (D.N.J. 2005). This is "appropriate inasmuch as the district court's order to arbitrate is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *See, Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir.1980). Denial of a motion to compel arbitration is reviewed under a de novo standard. The standard of review for a district court's denial of a motion to stay proceedings and to compel arbitration is plenary. *Edwards v. Hovensa, LLC*, 497 F.3d 355, 363 (3rd. Cir. 2007). *See Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 176 (3d Cir. 1999).

Consistent with this standard, a party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986). In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 247-48. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' *Celotex*, 477 U.S. at 324.

This dispute is connected with a transaction involving interstate commerce, and is therefore governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("The FAA"); *Trippe v.Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d. Cir. 2005). The interpretation of arbitration agreements generally is regulated by federal law - - specifically, the Federal Arbitration Act. However, the FAA instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate. *Steigerwalt v. Terminix Int'l Co.,* 2007 U.S. App. LEXIS 14984, \* 10 n. 2 (3rd Cir. 2007), *citing China Minmetals Materials Imp. & Export Co. v. ChiMei Corp.*, 334

F.3d 274, 290 (3d Cir. 2003).[1]

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [s]he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986). Accordingly, "'whether or not [a party is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.' " *Id.* at 649

A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement. *See PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir.1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85 (2002). When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitration. "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies*, 475 U.S.at 650.

Stadelmann maintains that the arbitration provision of the AIA document is incorporated by reference and therefore binds the parties to arbitration. Plaintiff, Nova Corp., disputes this, arguing that the Agreement and Purchase Order do not explicitly incorporate the arbitration provisions of the AIA General Conditions.  The doctrine of incorporation by reference dictates that " '[w]here a

---

[1]§ 1 provides that " 'commerce' ... means commerce among the several States ..." § 2 of the Act renders enforceable provisions in contracts "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ..." 9 U.S.C.A., §§ 1, 2. Nova is incorporated in Massachusetts and Stadelmann in New Jersey, with the Master SubContractor Agreement addressing the provision of electrical services for a building in Virginia.

writing refers to another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing ." ' *Carver v. Global Sports, Inc*., 2000 WL 378072, at *3 (E.D.Pa.2000) (quoting 4 Williston on Contracts § 628 (3d ed.1961)). It is not necessary that the document incorporated be one to which the parties to the underlying contract are signatories.  11 Williston on Contracts § 30.25 (4th ed.1990). "Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." *Shadowbox Pictures, LLC v. Global Enters, Inc.,* 2006 U.S. Dist. LEXIS 1135, *23 (W.D.Pa 2006) *quoting Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003). Reading the MSA, Project Manual, and the Purchase Order together, it is clear that AIA document A201 was included by reference.  Since Nova is the party who drafted the documents, there is no surprise or hardship.   Hence, the arbitration clause applies.

Notwithstanding that a valid arbitration agreement exists, Plaintiff also asserts that the arbitration provisions of the AIA General Conditions do not apply to disputes between the contractor and subcontractor.  According to the Plaintiff, the AIA General Conditions govern the Contract for Construction between the Owner i.e., Equinix and Plaintiff, Nova.  (Pl. Opp. Br. at 6).  Plaintiff cites to Section 1.1.2 which states that the AIA General Conditions, "shall not be construed to create a contractual relationship of any kind...between any persons or entities other than the Owner and Contractor."  However, this argument fails, as the AIA contains another provision addressing subcontractors, which states in pertinent part:

7

> By appropriate agreement, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all obligations and responsibilities -which the Contractor, by these Documents, assumes toward the Owner and Architect.

The Federal Arbitration Act's centerpiece provision makes a written agreement to arbitrate "in any maritime transaction or contract evidencing a transaction involving commerce...valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Yale Materials Handling Corp., v. White Storage & Retrieval Systems*, 240 N.J.Super. 370, 376 (A.D. 1990) quoting 9 U.S.C.A. § 2.  Moreover, any ambiguities concerning the scope of arbitratable issues should be resolved in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability."  *Hoffman v. Fidelity and Deposit Company of Maryland*, 734 F. Supp. 192 (D.N.J. 1990) *quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 105 S.Ct. 3346, 3353-54 (1985).

Plaintiff's final argument that even if applicable, the demand for arbitration is untimely.  This issue is not a determination for this court. Any procedural issues would be determined by the arbitrator. "Procedural questions that grow out of the dispute and bear on the final disposition are not for the judge, but for an arbitrator".  *Certain Underwriters at Lloyd's London v. Westchester Fire Insur., Co., et al.*, 489 F.3d 580, 585 (3d. Cir. 2007).

Finally, the FAA requires that "whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded." *Lloyd v. Hovensa LLC*., 369 F.3d 263, 269 (3d Cir.2004) (quoting 9 U.S.C. § 3). The Court accordingly stays the litigation.

The action is stayed pending arbitration.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

March 17, 2008